A96A0311. In the Interest of S. L. W., a child.
(471 SE2d 579)

Judge Harold R. Banke.

The biological mother of S. L. W. appeals the juvenile court's termination of her parental rights. The juvenile court also terminated the parental rights of S. L. W.'s putative father but no appeal has been taken from that portion of the court's order.

The applicable standard of review is whether a rational trier of fact could have found by clear and convincing evidence that the natural parent's rights had been lost. *In the Interest of T. M. R.*, 208 Ga. App. 499, 500 (430 SE2d 865) (1993). "The reviewing court is to defer to the lower court in the area of factfinding and should affirm unless

the appellate standard of review, here the rational factfinder test, is not met." Id.

Viewed in that light, the evidence was as follows: The State's first involvement with appellant occurred when Putnam County Department of Family and Children Services ("DFCS") received a report that S. L. W., then approximately age one, had been bitten by a rat. S. L. W. was placed in foster care but later returned to appellant. When S. L. W. was about age two, Fulton County DFCS received a referral from Grady Hospital due to S. L. W.'s ingestion of psychotropic drugs but before DFCS could intercede, appellant and S. L. W. disappeared from the hospital. The next referral occurred when friends of appellant contacted DeKalb County DFCS because appellant left S. L. W., then almost age three, in their care but neglected to let them know when she might return for her daughter. S. L. W. remained in DFCS custody for about one month before being reunited with appellant. In January 1991, DeKalb County DFCS sought and received immediate custody because S. L. W., then age five, had sustained burns on her hands, knee, forehead, right thigh, arms, back and torso while in appellant's care and custody. Appellant was subsequently charged with two counts of simple battery for the physical abuse of S. L. W. Appellant entered a plea of nolo contendere to Count 1, burning S. L. W. on the knee with a cigarette, and pleaded guilty to Count 2, punching S. L. W. in the chest with her fist. Appellant was sentenced to 12 months probation on each offense to run consecutively.

While the criminal charges were pending, appellant asserted that S. L. W. suffered from a dysautonomia, a rare disease also known as Riley-Day syndrome, where a person is unable to differentiate by touch between hot and cold temperatures. Even though a geneticist and two neurologists determined that S. L. W. did not and does not have this condition, appellant solicited help for S. L. W., leaving fundraising cans with various businesses. In August 1991, the juvenile court conducted an adjudicatory hearing and entered an order finding S. L. W. to be deprived and awarding temporary legal custody to DFCS. Appellant did not appeal.

As a precondition for reunification with the child, DFCS set several goals to be met by appellant. Judicial citizen review panels evaluated appellant's progress every six months from January 1991 up to the termination hearing. At the termination hearing, caseworkers who had worked directly with appellant testified about appellant's failure to comply with most of the goals in the reunification plans. The caseworkers detailed how appellant failed to show that she could appropriately discipline, supervise or protect S. L. W. On several occasions, appellant threatened to physically assault the caseworkers. A psychologist testified about appellant's personality disor-

der, mood swings, and need for intensive psychotherapy. The juvenile court determined that only two of the goals had been met and after hearing the testimony of nine witnesses and reviewing the evidence, ordered appellant's parental rights terminated. *Held*:

1. The juvenile court did not err in finding that S. L. W. did not need to testify at the termination hearing. OCGA § 15-11-83 (c) authorizes the juvenile court to exercise its discretion to determine whether it is in the child's interest to be brought before the court. To determine the necessity of S. L. W.'s presence, the juvenile court conducted a separate hearing during which S. L. W.'s guardian ad litem strenuously objected to requiring her presence. S. L. W.'s behavioral therapist, who conducted over 200 counseling sessions with S. L. W. since February 1991, testified that following visits with her mother or attendance at court proceedings, S. L. W.'s behavioral problems, including incidents of self-mutilation, would intensify dramatically. The juvenile court determined that S. L. W.'s testimony was not material or necessary to the termination proceedings and that requiring her to testify was not in her best interest. Under these facts, we are not able to say that the juvenile court abused its discretion. See *Harvey v. Fulton County Dept. of Family &c. Svcs.*, 147 Ga. App. 824 (250 SE2d 563) (1978).

2. The case plans were sufficiently plain, clear, and definite to comport with the requirements of due process. See OCGA § 15-11-41 (c). The plans articulated highly specific requirements and goals and were not ambiguous, vague, or arbitrary.

3. Prior to termination, reasonable efforts to reunite mother and daughter were made in compliance with State law.[1] OCGA § 15-11-41 (c) (3). OCGA §§ 15-11-81 (b) (4) (C) and 15-11-41 (b) impose a duty on DFCS to make "reasonable efforts" to reunite the family for at least a year after a family reunification plan is formulated. *In the Interest of M. R.*, 213 Ga. App. 460, 465 (2) (444 SE2d 866) (1994). Because the record amply documents the efforts made to effectuate reunification after S. L. W. entered State custody, we are unable to conclude that the State failed to satisfy the statutory requirements.

4. The juvenile court's determination was supported by the evidence in the record. Termination of parental rights requires a two-step process whereby, first, the juvenile court determines whether there is "present clear and convincing evidence of parental misconduct or inability," and second, the juvenile court then must consider "whether termination of parental rights is in the best interest of the child." OCGA § 15-11-81 (a).

---

[1] Because appellant failed to support her federal statutory law argument with citation of authority or argument, it is deemed abandoned. Court of Appeals Rule 27 (c) (2).

After the juvenile court took judicial notice of the prior deprivation order, which was unappealed, only the remaining three criteria of OCGA § 15-11-81 (b) (4) (A) (ii)-(iv) needed to be proven to show parental misconduct or inability. *In the Interest of B. P.*, 207 Ga. App. 242 (427 SE2d 593) (1993).

The second criterion, lack of proper parental care or control by the parent in question causing the child's status as deprived, is supported by evidence. Appellant physically abused S. L. W. and was criminally prosecuted for this abuse. Appellant failed to obtain on-going professional counseling for her violent and destructive behavior. A psychologist who evaluated appellant, testified that appellant needed intensive, long-term psychotherapy and without such treatment, appellant's extremely volatile behavior, psychological problems and continued denials that she ever abused S. L. W., placed S. L. W. at greater risk if she were ever returned to appellant. During the termination hearing, appellant continued to deny inflicting any burns and used the alleged syndrome as an explanation for the numerous burns and scars on S. L. W., claiming that S. L. W. sustained burns from a curling iron, space heater, stove, and toaster.

In light of appellant's physical abuse of S. L. W., extensive psychological impairment, failure to obtain proper treatment for her problems, and the detrimental effects her actions have had on S. L. W., appellant failed to exercise proper parental care or control which resulted in S. L. W.'s deprivation. OCGA § 15-11-81 (b) (4) (A) (ii).

As to the third criterion, the past conduct of a parent is properly considered by a court in determining whether such conditions of deprivation are likely to continue. *In the Interest of J. M. C.*, 201 Ga. App. 173, 174 (410 SE2d 368) (1991). Appellant repeatedly failed to complete the goals for reunification, failed to complete case plans, failed to provide proof of steady employment, and failed to obtain on-going professional psychological counseling. Therefore, the "cause of deprivation is likely to continue or will not likely be remedied." OCGA § 15-11-81 (b) (4) (A) (iii).

As to the fourth criterion, the evidence showed that appellant was incapable of properly parenting her child and that her ineptitude was not likely to end. Further, the evidence showed that after visits from appellant, S. L. W.'s behavior problems and anxiety intensified. Incidents such as S. L. W.'s carving herself with a shard of glass, burning herself on her stomach with an iron, and thrusting her foot through glass, occurred after encounters with appellant or the court system. Thus, the evidence was sufficient to satisfy the fourth criterion that "[t]he continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child." OCGA § 15-11-81 (b) (4) (A) (iv).

We find that the evidence presented to the juvenile court was sufficient to enable a rational factfinder to have found by clear and convincing evidence, parental misconduct or inability as required by OCGA § 15-11-81 (b). See *In re B. D. C.*, 256 Ga. 511, 512-513 (350 SE2d 444) (1986); *In the Interest of J. M. K.*, 189 Ga. App. 140 (375 SE2d 131) (1988).

"[T]hose same factors which show the existence of parental misconduct or inability can also support a finding that the termination of parental rights of the defaulting parent would be in the child's best interest." *In the Interest of G. K. J.*, 187 Ga. App. 443, 444 (2) (370 SE2d 490) (1988). Appellant had an extensive pattern of failing to maintain stable permanent housing and legitimate employment. Although appellant claimed she no longer worked as a prostitute, and was gainfully employed as a nurse's aide for an elderly man, DFCS was unable to satisfactorily verify her employment. The evidence further indicated that appellant never established a lasting relationship with her daughter and failed to meet S. L. W.'s emotional and psychological needs.

For the foregoing reasons, we find that a rational trier of fact could have found clear and convincing evidence that the deprivation is likely to continue and that the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to S. L. W. *In re B. D. C.*, 256 Ga. at 513; OCGA § 15-11-81 (b) (4) (A) (iii, iv). Accordingly, the juvenile court correctly determined that the termination of appellant's parental rights was in the best interest of S. L. W.

*Judgment affirmed. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED MAY 23, 1996.

*Chandler R. Bridges, Hurl R. Taylor, Jr.*, for appellant.
*Michael J. Bowers, Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Assistant Attorney General, Robert G. Nardone*, for appellee.