A00A2015. IN THE INTEREST OF A. L. B. et al., children.
(538 SE2d 557)

ELDRIDGE, Judge.

Appellant appeals the order of the juvenile court terminating her parental rights to A. L. B. and A. L. B.[1] Although the appellant challenges the sufficiency of the evidence to support the termination of her parental rights, we disagree and affirm.

On April 9, 1999, the Laurens County Department of Family & Children Services ("DFCS") filed a petition for termination of parental rights under provisions of OCGA § 15-11-81 (b) (4) (B) (ii) and (iv) against appellant and her husband for chronic unrehabilitated abuse of alcohol, domestic violence, and child molestation. The juvenile court heard the petition on September 10, 1999, and December 10, 1999, thereafter ordering their parental rights terminated. This appeal followed.

Appellant contends that there was insufficient evidence to terminate her parental rights for want of evidence showing that her children's deprivation was likely to continue.[2]

---

[1] The father's parental rights in the two children were also terminated, although he has not subsequently appealed.

[2] In doing so, the appellant, by brief, concedes that the children were deprived within

Parental rights are terminated under OCGA § 15-11-81 upon a two-prong analysis.

First, the court determines whether there is clear and convincing evidence of parental misconduct or that the parent is unable to care for and control the child. Second, the court determines whether termination is in the best interest of the child.

(Citations and punctuation omitted.) *In the Interest of S. H. P.*, 243 Ga. App. 720 (534 SE2d 161) (2000).

Parental misconduct or inability is determined by finding: 1) that the child is deprived; 2) that the lack of proper parental care or control is the cause of the deprivation; 3) that such child's deprivation is likely to continue or will not be remedied; and 4) that continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-81 (b) (4) (A).

*In the Interest of D. I. W.*, 215 Ga. App. 644, 645 (1) (451 SE2d 804) (1994).

On appeal, we are required to view the evidence in the light most favorable to the juvenile court's order in determining whether a rational trier of fact could have found by clear and convincing evidence that the parent's rights had been lost. Ours is not to weigh the evidence, but to defer to the trial judge as the factfinder. *In the Interest of S. H. P.*, supra at 721; *In the Interest of D. I. W.*, supra.

So viewing the evidence, the record reflects that the appellant has a long history involving alcohol abuse and domestic violence. It is undisputed that when the superior court entered its order terminating her parental rights in February 2000, the appellant no longer had a driver's license; she had five DUIs; she had most recently been arrested for an alcohol-related offense in December 1998, threatening suicide over it; she had a history of treatment for alcohol abuse and relapse; she had been continuously sober for a nine-month period only once, having started drinking at age twelve; she had been involved in seventeen family violence incidents; she had been severely beaten in the last of these in October 1999; and she was under medication for depression.[3] Morever, although the appellant

---

the meaning of OCGA § 15-11-81 (b) (4) (A) (i) at the time the termination petition was filed. Inasmuch as the juvenile court's order determining the children to be deprived was not appealed, such status is binding on appeal. *In the Interest of B. P.*, 207 Ga. App. 242, 244 (427 SE2d 593) (1993).

[3] Perhaps illustrative of her depression, at trial the appellant identified a State's

testified she had complied with the ten-goal reunification plan in effect before the termination petition was filed, a DFCS caseworker testified that her effort to follow the plan had not been conscientious — this because drinking and domestic violence recurred through December 1998, notwithstanding the participation of the appellant and her husband in an alcohol and drug treatment program.

Appellant here argues the insufficiency of the evidence to show that the deprivation of the children would likely continue in the future, seeking our reversal of the termination of her parental rights. However, " 'the past conduct of the parent is properly considered by the court in determining whether such conditions of deprivation are likely to continue. (Cits.)' " *In the Interest of J. M. C.*, 201 Ga. App. 173, 174 (410 SE2d 368) (1991), citing *In the Interest of J. L. Y.*, 184 Ga. App. 254, 257 (361 SE2d 246) (1987). While the record does show that appellant attended Alcoholics Anonymous, got a job, and began paying child support, this belated activity occurred after the termination petition was filed and does not negate the years the appellant neglected the children. *In the Interest of S. H. P.*, supra at 723. Neither did the appellant present evidence of having her own home[4] or of any emotional bond or attachment to the children. Finally, while the appellant correctly argues that the superior court erred in admitting child hearsay alleging child molestation against her husband and in her presence[5] for failure to show the availability of the child witness under *Woodruff v. Woodruff*, 272 Ga. 485 (531 SE2d 714) (2000) (competency of children in civil actions established upon a showing of their understanding of the meaning and effect of an oath), she has not demonstrated prejudice inuring to her detriment. *Tarleton v. Griffin Fed. Sav. Bank*, 202 Ga. App. 454, 455 (2) (b) (415 SE2d 4) (1992) ("An appellant must show harm as well as error to prevail on appeal; error to be reversible must be harmful. [Cits.]"). In this regard, the appellant admitted on being cross-examined that she allowed her husband to sleep with the complaining child when she and her husband argued, disclaiming any child molestation because "[her husband] always wore shorts or something."

Accordingly, we conclude that there is clear and convincing evi-

---

Exhibit 7 as a photograph depicting cigarette burns on her arm. She explained, "Me and this guy was playing chicken and he put a cigarette there; that's how this got there."

[4] It is undisputed that the "[appellant] is living in another [c]ounty in a relative's home in a small three bedroom house. One bedroom has a [ ]hole in the roof and is unusable. Should the children be returned to the mother, they would be required to live in the aunt's room and not in the mother's room."

[5] It is also undisputed that "[appellant's husband pled] guilty to a criminal offense related to child molestation in regard to his [oldest daughter, then approximately five], and the [appellant] was similarly charged but those charges were dropped in a plea bargain arrangement whereby the father pleaded guilty to offense of sexual battery against [such] daughter."

dence that the children are deprived due to parental misconduct, that their deprivation will likely continue into the future or will not be remedied, and that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the children.

In determining the best interest of a child, a trial court may consider the child's need for stability in the home and the adverse consequences attendant to extended foster care. *In the Interest of M. R.*, 213 Ga. App. 460, 464 (444 SE2d 866) (1994), overruled on other grounds, *In the Interest of C. W. S.*, 231 Ga. App. 444 (498 SE2d 813) (1998). Such a court is properly concerned with the need for stability in a child's life. *In the Interest of S. H. P.*, supra at 724 (2). The children have been in foster care in the home of their paternal aunt and uncle since October 1997, a placement made upon the recommendation of both parents. They are doing well in that setting, and their adoption appears likely. While the appellant argues by her brief on appeal that the progress she has made in achieving the goal established by the case plans aimed at reunifying the family, as well as progress in her personal life, demonstrates her capacity to be an effective parent, " 'the decision as to a child's future must rest on more than positive promises which are contrary to negative past fact. [Cit.]' " *In the Interest of D. I. W.*, supra at 646. Also, " '(t)he same factors which prove a parent's inability to properly raise [her] children may also serve to show that termination of parental rights would be in the children's best interests. (Cit.)' *In the Interest of V. S.*, [230 Ga. App. 26, 30 (495 SE2d 142) (1997)]." *In the Interest of S. H. P.*, supra.

Accordingly, the juvenile court's finding that the termination of parental rights is in the best interests of the children was also authorized by clear and convincing evidence.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED AUGUST 25, 2000 —
RECONSIDERATION DENIED SEPTEMBER 6, 2000.

*Nelson & Smith, Carlton K. Nelson III*, for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Laura W. Hyman, Assistant Attorneys General, Cheeley & Joiner, John P. Cheeley, William L. Tribble*, for appellee.