A97A1117. IN THE INTEREST OF S. M. L. et al., children.
(491 SE2d 186)

JOHNSON, Judge.

In a criminal trial which is not the subject of this appeal, Michael Loftus was convicted of molesting his three daughters, S. M. L., T. L. L., and W. L. L. Thereafter, the girls' mother petitioned the juvenile court to terminate his parental rights, based on his convictions of molesting the children and on allegations that he failed to provide proper parental care, control and support. See OCGA § 15-11-81. An evidentiary hearing was held in which the father, among others, testified and was represented by counsel. The juvenile court issued an order terminating the father's parental rights after finding clear and convincing evidence of his parental misconduct or inability. The court based its decision on evidence that the father molested his three daughters, failed to provide a stable or suitable home environment for the children, abandoned the mother and children, failed to provide the children with food or appropriate clothing, abused drugs, used his earnings to buy cocaine instead of food or clothing for the children, and threatened to kill the children's mother. He appeals.

1. The father contends that the trial court erred in allowing a child protective services investigator, a women's shelter manager, a school counselor, and a therapist to testify as to the contents of statements made by the children when the reliability of the statements had not been established. We disagree.

OCGA § 24-3-16 provides, in pertinent part, that a witness can testify as to a statement made to the witness by a child under the age of 14 describing an act of sexual contact or physical abuse performed on the child or in the child's presence if the child is available to testify and the court finds the circumstances of the statement provide sufficient indicia of reliability.

The record shows that each of the four witnesses was specifically asked about the circumstances surrounding the statements, the spontaneity of the statements, the child's age, demeanor, and physical or mental condition, the presence or absence of threats or promises, whether the child was under the influence of alcohol or

drugs, the child's credibility, the apparent presence or absence of coaching before or at the time the statements were made, and the consistency between statements made by the child. Although the father maintains that the children might have been coached, he points to no evidence indicating that they were. See generally *White v. State*, 213 Ga. App. 429, 432 (2) (445 SE2d 309) (1994). The juvenile court did not err in permitting the witnesses to testify as to the children's statements. See generally *In the Interest of D. R. C.*, 198 Ga. App. 348, 349-350 (2) (401 SE2d 754) (1991).

2. The father complains that his due process rights were violated when, before the hearing, the juvenile court judge interviewed the children in chambers with counsel for both parties present, but did not allow either parent to attend. The father argues that the interview constituted a "witness confrontation" and that therefore he should have been allowed to attend and assist his attorney in questioning the children. We disagree.

"[T]he right to confrontation is a *trial* right. . . . [T]he Confrontation Clause only guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (Citations and punctuation omitted; emphasis in original.) *Sosebee v. State*, 190 Ga. App. 746, 749 (3) (380 SE2d 464) (1989). The interview at issue in this case did not occur at trial, but during the pre-trial discovery process. This fact distinguishes the instant case from *In the Interest of M. S.*, 178 Ga. App. 380 (343 SE2d 152) (1986), upon which the father relies. Here, the father was not denied the opportunity to confront the witnesses or assist his attorney in doing so *at trial*. Compare id. at 381.

We emphasize that the juvenile court's primary responsibility is to consider the welfare of the child. See *Gardner v. Lenon*, 154 Ga. App. 748, 749 (270 SE2d 36) (1980); *In the Interest of L. L. W.*, 141 Ga. App. 32, 33 (232 SE2d 378) (1977). The juvenile court noted in its order regarding the pre-trial interview that it considered the best interests of the children. At the same time, the court showed due regard for the father's interests by permitting the father's attorney to be present during the interview. We find no error.

3. The father contends the juvenile court erred in allowing a probation officer to testify as to the contents of a pre-sentence investigation report, when such a report is confidential and not subject to subpoena. See OCGA § 42-8-40. However, the witness did not testify as to the report's contents or read from it, but simply used the report to refresh his recollection about interviews he had with the father. The court instructed the witness not to read from the document or testify to anything he did not actually remember after reviewing the report. A witness may refresh his memory by using *any* written instrument

or memorandum, provided he finally testifies from his recollection thus refreshed or swears positively from the paper. OCGA § 24-9-69. We have found no authority holding that a person who authored a document which is confidential and not subject to subpoena cannot voluntarily use the document to refresh his own memory. We find no error.

4. The father argues that the juvenile court erred in permitting a police detective to testify regarding the contents of a statement the father gave police during the criminal case and by allowing a transcript of the taped statement into evidence. In his statement, the father denied "touching [his] daughters in any immoral way," but admitted being addicted to cocaine, threatening, pushing and verbally abusing his wife, playing "titty-twister" with one daughter, and touching the girls' vaginas, though he stated he was checking for yeast infections.

(a) He complains that testimony regarding the statement was inadmissible because there had been no showing that the statement was freely and voluntarily made. The father cites no authority, nor have we found any, supporting his argument that the statement made in the earlier criminal case must be shown to have been free and voluntary to be admitted in a termination of parental rights case. Indeed, termination of parental rights cases are more civil in nature than criminal. See *Ray v. Dept. of Human Resources*, 155 Ga. App. 81, 84 (1) (270 SE2d 303) (1980). However, parents facing termination of their rights have been afforded some of the protections to which criminal defendants are entitled. See, e.g., *Nix v. Dept. of Human Resources*, 236 Ga. 794, 796 (225 SE2d 306) (1976) (indigent parent has right to appointed counsel and to a paupered transcript of the proceeding; all proceedings in juvenile court are to be reported unless waived); *In the Interest of M. S.*, supra (parent has right to confront witnesses at trial). Even assuming without deciding that a showing of voluntariness is required in a termination case, that showing was made here. The detective who took the statement testified that the father made the statement freely and voluntarily after he was read his *Miranda* rights and stated that he understood those rights and the charges filed against him. The detective's testimony is supported in the record by the transcript of the interview in which the statement was made and by a "Miranda Warning Rights and Waiver Form" signed by the father indicating that he understood and waived his rights and that his statement was being freely and voluntarily made. Additionally, the father had the opportunity when testifying at the hearing to show that the statement was not freely and voluntarily made, though he failed to do so.

(b) He also objects to the court admitting the transcript of the statement when it contained "glaring inaccuracies" and a "lack of

attention to detail in its preparation." He does not specify how it was inaccurate or how the alleged inattention to detail rendered the transcript inadmissible or harmful. He has failed therefore to show error or harm by the record.

5. The father's contention that the juvenile court erred in terminating his parental rights in the absence of clear and convincing evidence of parental misconduct or inability is without merit. In addition to his having been convicted of molesting all three of his daughters, there was evidence that he failed to provide them with a stable residence, abandoned them and their mother, and used half of his paycheck to buy crack cocaine though his children had no food or appropriate clothing. In its detailed order terminating the father's parental rights, the juvenile court noted that "[the father] expressed no remorse or culpability for his actions and is in a state of denial rarely observed by this Court." There was clear and convincing evidence to support the juvenile court's finding as to the father's parental misconduct or inability. See *In the Interest of L. M.*, 219 Ga. App. 746, 749 (2) (466 SE2d 887) (1996).

*Judgment affirmed. Pope, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED AUGUST 11, 1997.

*John P. Rivers*, for appellant.
*Holle Weiss-Friedman*, for appellee.