## A98A1999. In the Interest of I. G., a child.
### (513 SE2d 53)

Ruffin, Judge.

Appellant, the mother of I. G., appeals from the juvenile court's order terminating her parental rights.[1] On appeal, the mother challenges the sufficiency of the evidence. Since ample evidence supports the order, we affirm.

"The question on appeal is whether, after reviewing the evidence in a light most favorable to the lower court's judgment[ ], any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's factfinding and affirm unless the appellate standard is not met." (Citation and punctuation omitted.) *In the Interest of S. N. N.*, 230 Ga. App. 109 (495 SE2d 602) (1998).

The evidence shows that appellant is the mother of I. G. and I. G.'s two older siblings, C. G. and D. W.[2] The Department of Family & Children Services (DFCS) became involved with appellant's family in July 1995, after appellant was arrested following a physical altercation with her brother. At the time of the arrest, appellant had one child, D. W., and was pregnant with her second child, C. G. As a result of the arrest, DFCS implemented a case plan which required appellant to attend parenting classes. Although DFCS provided transportation for these classes, appellant failed to attend because she felt she was a "good parent."

In May 1996, DFCS obtained custody of D. W. and C. G. after appellant left them without adequate supervision. Following a brief stint in foster care, the children were returned to appellant under the protective supervision of DFCS.

In December 1996, shortly after the birth of I. G., appellant became frustrated with one-year-old C. G. because he would not stop crying and she shook him to the point that he went into a "shock-like state." According to a DFCS caseworker, as a result of this injury, C. G. is in "a persistent vegetative state" from which he is not likely to recover. C. G. is blind, unable to move, and is able to eat strained baby food only if his chin is moved "sort of like you do a puppy with a pill trying to get him to swallow."

In addition to the injury caused by shaking, a police officer discovered both old and new bite marks on C. G.'s body as well as a heal-

---

[1] The juvenile court also terminated the parental rights of I. G.'s putative father, who did not appeal.

[2] The order of the juvenile court did not address termination of appellant's parental rights with regard to C. G. or D. W.

ing cigarette burn on his leg. The police arrested appellant, and charged her with aggravated battery and child abuse. The caseworker testified that since her arrest, appellant has made no effort to contact any of her children. In March 1997, appellant pled guilty to aggravated battery and cruelty to a child and was sentenced to serve 25 years in jail.

On December 27, 1996, DFCS filed a deprivation petition seeking the court's protection for appellant's three children. After a hearing on the matter, the court found that appellant's children were deprived and awarded temporary custody to DFCS. On September 29, 1997, DFCS filed a petition to terminate appellant's parental rights to I. G. Following a hearing on January 13, 1998, the juvenile court issued an order on March 17, 1998 terminating appellant's parental rights." Under OCGA § 15-11-81 (a), the considerations for terminating parental rights involve a two-step process. The trial court must first determine 'whether there is present clear and convincing evidence of parental misconduct or inability.' OCGA § 15-11-81 (a)." (Citation and punctuation omitted.) *In the Interest of M. E. C.*, 228 Ga. App. 9 (1) (491 SE2d 107) (1997). OCGA § 15-11-81 (b) (4) (A) sets forth the factors to consider in determining whether such evidence exists.

"The first factor in the determination of parental misconduct or inability is consideration of whether the child is deprived. In the case sub judice, [I. G.] was determined to be deprived in [February 1997] and was taken into custody by DFCS. This deprivation order . . . has not been appealed by appellant. Therefore, appellant is bound by this finding of deprivation and the first factor is satisfied." *In the Interest of E. C.*, 225 Ga. App. 12, 14-15 (482 SE2d 522) (1997).

Second, in determining whether a child is without proper parental care and control, the court shall consider the "[c]onviction of the parent of a felony and imprisonment therefor which has a demonstrable negative effect on the quality of the parent-child relationship." OCGA § 15-11-81 (b) (4) (B) (iii). " 'Although imprisonment alone does not always compel termination of parental rights, it will support such a ruling when adequate aggravating circumstances are shown to exist.' " *In the Interest of S. N. N.*, supra at 110 (1). Here, appellant inflicted unspeakable injuries on one of her infant children. Pursuant to OCGA § 15-11-81 (b) (4) (B) (iv), evidence of egregious conduct toward another child of a physically abusive nature shall be considered by the court in determining whether a child is without proper parental control. The type of abuse inflicted by appellant is "undoubtedly that detrimental and egregious parental misconduct which justifies the termination of parental rights. Although [I. G.] has not been the object of such abuse, the severe nature of the abuse of [C. G.] . . . is sufficient to authorize the termination of appellant's

parental rights in regard to [I. G.]." (Citations and punctuation omitted.) *In the Interest of A. T.*, 187 Ga. App. 299, 300-301 (1) (370 SE2d 48) (1988); see also *In the Interest of V. S.*, 230 Ga. App. 26 (495 SE2d 142) (1997).

We agree with the court's determination that there is clear and convincing evidence that the deprivation is likely to continue. OCGA § 15-11-81 (b) (4) (A) (iii). Although appellant had an opportunity to attend parenting classes, she made no attempt to improve her skills. Even before her rights had been terminated, appellant did not try to contact her children while they were in foster care nor did she write them letters or send them cards. Appellant blamed her failure to contact her children on the fact that the DFCS caseworker told her that she could not see them. However, the caseworker denied appellant's contention, claiming that she told appellant that she could remain in touch with her children.

Moreover, appellant's refusal to accept the consequences of her actions supports a determination that the deprivation will continue. At the hearing, appellant refused to acknowledge her role in C. G.'s injuries. Although she confessed to the investigating officer that she had bitten C. G., at the hearing she denied biting him. When asked about the "horrible" injuries to C. G., appellant responded "I don't believe it was horrible. I think it was — in my heart it was an accident." See *In the Interest of S. M. L.*, 228 Ga. App. 81, 84 (5) (491 SE2d 186) (1997).

Finally, the continued deprivation is likely to cause I. G. serious physical, mental, emotional, or moral harm. OCGA § 15-11-81 (b) (4) (A) (iv). At the time of the termination of parental rights hearing, appellant had been incarcerated for only three to four months of her twenty-five year sentence and had not been given a tentative parole date. Thus, for the foreseeable future, appellant will be unable to care for I. G. Even if appellant was not in jail, the fact that she inflicted traumatic injury to I. G.'s sibling would support a finding that she was likely to cause I. G. serious physical harm.

"Once the trial court establishes parental misconduct or inability, the second part of the test for determining whether parental rights should be terminated is whether such termination 'is in the best interest of the child, after considering the physical, mental, emotional, and moral condition and needs of the child who is the subject of the proceeding, including the need for a secure and stable home.' OCGA § 15-11-81 (a)." (Citation and punctuation omitted.) *In the Interest of M. E. C.*, supra at 10. The same evidence showing parental misconduct or inability may, and here does, establish this requirement." (Punctuation omitted.) *In the Interest of C. L. R.*, 232 Ga. App. 134, 138 (2) (501 SE2d 296) (1998).

*Judgment affirmed. Pope, P. J., and Beasley, P. J., concur.*

DECIDED FEBRUARY 24, 1999.

*John P. Rivers,* for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Stephanie B. Hope, Assistant Attorneys General, James A. Chamberlin, Jr.,* for appellee.